UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JANE FELIX** and **B.N. COONE,**
    Plaintiffs,

vs.                                                                                    No. 1:12-cv-00125-JAP/RHS

**CITY OF BLOOMFIELD,** et al.,
    Defendants.

## MEMORANDUM ORDER AND OPINION

DEFENDANTS ECKSTEIN, PENNINGTON, LYNCH, AND LUCERO'S OPPOSED MOTION TO RECONSIDER ORDER DENYING SUMMARY JUDGMENT (Doc. No. 95) (Motion to Reconsider) asks the Court to reconsider three arguments made in Defendants' motion for summary judgment. Defendants Eckstein, Pennington, Lynch, and Lucero (the Individual Defendants) seek a dismissal of the claims against them in their official and individual capacities based on redundancy, qualified immunity, and legislative immunity. Plaintiffs oppose the Motion to Reconsider. *See* PLAINTIFFS' RESPONSE TO INDIVIDUAL DEFENDANTS' MOTION TO RECONSIDER ORDER DENYING SUMMARY JUDGMENT (Doc. No. 97) (Response). Because the Court misapprehended Defendants' position and because the claims against the Individual Defendants should be dismissed even under Plaintiffs' asserted facts, the Court will grant the Motion to Reconsider.

## BACKGROUND

**A. Erection of the Ten Commandments Monument**

Unless otherwise noted, the following facts are undisputed. On April 3, 2007, at a special council meeting, Mr. Kevin Mauzy, a member of the Bloomfield City Council, proposed that the City of Bloomfield allow citizens to erect a Ten Commandments monument on the city lawn.

1

Exhibit 001, Stipulated Factual Contentions ¶¶ 13, 10, 82.[1] The Bloomfield City Council unanimously approved the placement of the Ten Commandments monument, *Id.* ¶¶ 13, 85, which was not erected until a little more than four years later. *Id.* ¶¶ 31, 92. At the time of the April 3, 2007 meeting, there was no written policy regarding the placement of monuments on the city lawn. *Id.* ¶ 51.

Following the April 3, 2007 approval, some citizens expressed opposition to the Ten Commandments monument. *Id.* ¶¶ 14-16. On July 9, 2007, the Bloomfield City Council unanimously approved a resolution creating a forum policy governing the placement of monuments on the city lawn. *Id.* ¶¶ 52-53, 88. The policy allowed private citizens to erect permanent monuments on the city lawn. *Id.* ¶ 54.

On March 10, 2008, Mr. Mauzy left the Bloomfield City Council. *Id.* ¶¶ 10, 89. Several years passed without event.

On June 13, 2011, the Bloomfield City Council met. *See id.* ¶ 91. The parties dispute the exact events and outcome of the meeting. Defendants claim that Mr. Mauzy, now a private citizen, proposed to erect the Ten Commandments monument under Bloomfield's forum policy. Exhibit 003, Defendants' Contested Factual Contentions ¶ 10. In response, the Bloomfield City Council approved the monument. *Id.* ¶ 12. Plaintiffs point out that the minutes from the meeting merely state that the Bloomfield City Council approved "Acknowledge monument placement" as part of the consent agenda. PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 71) at 5-6.

---

[1] On September 20, 2013, the parties submitted a proposed pretrial order in anticipation of the pretrial conference. Attached to the proposed order were a list of stipulated factual contentions and a list of the parties' contested factual contentions. Because these lists contain the most up-to-date and concise account of the facts, the Court will rely on them for the purposes of this order. The lists are attached as Exhibit 001, 002, and 003 to the MEMORANDUM OPINION AND ORDER.

In any event, the parties agree that Mr. Mauzy proceeded to build the Ten Commandments monument. Exhibit 001, Stipulated Factual Contentions ¶ 92. It was completed in early July 2011, at which time it was the first and only monument on the city lawn. *Id.* ¶¶ 31, 92. Mr. Mauzy placed a sign on the city lawn explaining that the City of Bloomfield created a public forum and that the monument did not speak for the City of Bloomfield. *Id.* ¶ 93. He planned and held a dedication ceremony where religious references were made. *Id.* ¶¶ 46-47, 98-99, 135-37.

On July 25, 2011, after the erection of the monument, the Bloomfield City Council amended the forum policy. *Id.* ¶¶ 55, 102. The updated Bloomfield forum policy allows monuments to be displayed for ten years, after which the donor must submit a request to extend the display time another ten years. It refrains from characterizing the monuments as "permanent." *Id.* ¶ 56. Since the erection of the Ten Commandments monument, the Bloomfield City Council has approved two additional monuments: a Declaration of Independence monument and a Gettysburg monument. Both monuments were proposed and erected by Mr. Mauzy. *Id.* ¶¶ 103-04, 107-08.

**B.  The Individual Defendants and their Involvement**

Mr. Scott Eckstein is the duly elected Mayor of the City of Bloomfield. *Id.* ¶ 8. Mayor Eckstein did not participate in the 2007 or 2011 votes regarding the Ten Commandments monument and the forum policy, because he only votes to break ties. *Id.* ¶¶ 85, 121; Declaration of Scott Eckstein in Support of Defendants' Motion for Summary Judgment, Exhibit G to

Defendants' Motion for Summary Judgment (Doc. No. 63-8) (Eckstein Declaration) ¶¶ 22, 26.[2]

Mr. Matt Pennington, Mr. Curtis Lynch, and Mr. Pat Lucero are members of the Bloomfield City Council. *Id.* ¶ 9. They did not participate in the 2007 vote to approve the monument or the 2007 vote to create a forum policy, *Id.* ¶ 121, presumably because they were not members of the Bloomfield City Council at the time of either meeting. *See id.* ¶¶ 85, 88, 121. Defendants Pennington, Lynch, and Lucero did participate in the June 13th vote approving the Ten Commandments monument and the July 25th vote amending the forum policy. Motion at 6.

The parties stipulate that the City Council has the power to order the removal of the Ten Commandments monument from land belonging to the City of Bloomfield. *Id.*

## C. Procedural Background

On April 15, 2013, Plaintiffs Jane Felix and B.N. Coone, and Defendants, the City of Bloomfield, Scott Eckstein, Matt Pennington, Curtis Lynch, and Pat Lucero cross-moved for summary judgment on Plaintiffs' claim that the Ten Commandments monument on Bloomfield's city hall lawn violates the Establishment Clause. *See* PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT (Doc. No. 62); DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 63) (collectively, Motions for Summary Judgment). Defendants also sought summary judgment on the claims against the Individual Defendants based on redundancy and immunity.

After reviewing the briefing on the Motions for Summary Judgment, it appeared to the Court that both Plaintiffs and Defendants denied or disagreed with what the opposing parties

---

[2] The parties stipulate that Mayor Eckstein did not vote at the 2007 meetings, Exhibit A, Stipulated Factual Contentions ¶ 121, but do not stipulate that Mayor Eckstein did not vote at the 2011 meetings. However, Mayor Eckstein testified that he did not vote at the 2011 meetings, Eckstein Declaration ¶¶ 22, 26, and Plaintiffs have not contested the fact or produced evidence to the contrary. Moreover, at the pretrial conference the Court asked Plaintiffs to identify the specific conduct of Mayor Eckstein on which they based their claims. Counsel did not claim that Mayor Eckstein participated in the votes concerning the monument or the forum policy.

claimed were "undisputed" material facts. *See* ORDER (Doc. No. 89) at 2. On July 17, 2013, the Court sent a letter to counsel. *See* Letter from Senior United States District Judge James A. Parker to Counsel, July 17, 2013, Exhibit A to ORDER (Doc. No. 89) (Court Letter). The Court requested that the parties assist the Court "in identifying which, if any, of the disputed facts involve a genuine dispute as to any material fact within the meaning of that language in Fed. R. Civ. Proc. 56." *Id.*

On August 9, 2013, the parties replied to the Court Letter with a list of disputed facts. *See* Revised Disputed Facts, Exhibit D to ORDER (Doc. No. 89). The parties could not reach a resolution on 76 facts presented in the briefs on the Motions for Summary Judgment. *Id.* Without addressing the legal arguments in the Motions for Summary Judgment, the Court denied summary judgment because neither party could show that there was no dispute as to any material fact.

## DISCUSSION

### A. Standard of Review

The rules of civil procedure allow a party to object to an order or decision through either a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment under Fed. R. Civ. P. 60(b). *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). If a party files a motion for reconsideration within twenty-eight days of the decision, the Court will treat it as a motion to alter or amend a judgment under Rule 59. *Barber ex rel. Barber v. Colorado Dept. of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009).  The Motion to Reconsider was filed within twenty-eight days after the Order was entered; thus, the Court will consider the Motion under the standards of Rule 59. Under Rule 59, the Court may grant a motion for reconsideration if the movant shows that "the court has misapprehended the facts, a

5

party's position, or the controlling law." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

**B. Redundancy of Suing the Individual Defendants in their Official Capacities**

The Individual Defendants argue that it is redundant to sue them in their official capacities while also suing the City of Bloomfield.[3] Suing a city official in his official capacity is the same as suing the city itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suite against the entity . . .). An official-capacity suit is not a suit against the individual, but rather is a suit against the individual's office, which is the real party in interest. *Id.* at 165-66. Damages awarded against a defendant in his official capacity are only recoverable against the governmental entity itself. *Id.*

Where a plaintiff chooses to sue both the municipality and the municipal officials in their official capacities, courts routinely dismiss the official-capacity claims as redundant. *See, e.g.*, *Buck v. City of Albuquerque*, 549 F.3d 1269, 1275 (10th Cir. 2008) (noting, but not discussing, a district court decision to dismiss as redundant claims against a police captain in his official capacity because the plaintiffs asserted the same claims against the City of Albuquerque); *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (district court was correct in dismissing § 1983 claims against all municipal officers in their official capacities because allegations duplicated claims against governmental entities themselves); *Rose R. v. Connelly*, 889 F.2d 435, 437 (2d Cir. 1989) (affirming dismissal of § 1983 claim against school superintendent in official capacity because school board was real party in interest); *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987) (noting that suit against both city and mayor in his official capacity is really suit

---

[3] In the briefing on the Motions for Summary Judgment and on the Motion to Reconsider, Plaintiffs never address Defendants' request that the official-capacity claims be dismissed as redundant. *See* PLAINTIFFS' RESPONSE TO INDIVIDUAL DEFENDANTS' MOTION TO RECONSIDER ORDER DENYING SUMMARY JUDGMENT (Doc. No. 97); PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 71).

against only one defendant; nothing was added by suing mayor in his official capacity because city is liable for official actions of its senior policy-making official); *Neuberger v. Gordon*, 567 F. Supp. 2d 622, 631 (D. Del. 2008) (finding that an official-capacity suit against county officials for injunctive relief and attorneys' fees was redundant because any injunction issued by the court against the county would bind the county's officers, agents, servants, and employees); *DeYapp v. Tracy*, No. Civ. 02-452 JP/RLP, slip op. at 12 (D.N.M. June 28, 2004) ("Because Plaintiff's claim against Chief McCloskey in his official capacity is duplicative of the claim brought against the City, the Court finds that the official capacity claim against Chief McCloskey should be dismissed."); *Sims v. Unified Gov't of Wyandotte County/Kansas City*, 120 F.Supp.2d 938, 944 (D.Kan. 2000) (claims against officials in official capacities are duplicative of claims against Unified Government and should be dismissed); *Doe v. Douglas County Sch. Dist.*, 775 F.Supp. 1414, 1416 (D. Colo. 1991) (where plaintiff brought § 1983 claim against school district and against school psychologist in his official capacity, court dismissed redundant official-capacity claim as matter of judicial economy and efficiency).

The Court finds that Plaintiffs' § 1983 claims brought against Defendants Eckstein, Pennington, Lynch, and Lucero in their official capacities are redundant, confusing, and unnecessary, because they are the same claims as the one brought against the City of Bloomfield. Consequently, because adding an official-capacity claim "makes no practical difference," *see Jungels*, 825 F.2d at 1129, Plaintiffs' § 1983 official-capacity claims against Defendants Eckstein, Pennington, Lynch, and Lucero will be dismissed.

## C.  Legislative Immunity

Defendants Pennington, Lynch, and Lucero assert legislative immunity to the extent that Plaintiffs seek to hold them liable based on the July 25, 2011 vote amending the forum policy.

7

Plaintiffs do not dispute that Defendants Pennington, Lynch, and Lucero are entitled to absolute legislative immunity for the vote. *See* PLAINTIFFS' RESPONSE TO INDIVIDUAL DEFENDANTS' MOTION TO RECONSIDER ORDER DENYING SUMMARY JUDGMENT (Doc. No. 97) at 4 ("[T]he Individual Defendants are not being sued for enacting the City of Bloomfield's policies governing the placement of monuments on the City Hall lawn . . .").

The Court agrees. "Legislators, including local legislators, are absolutely immune from suit for their legislative activities." *Borde v. Bd. of County Comm'rs*, 423 Fed. Appx. 798, 801 (10th Cir. 2011) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998)) (unpublished). Examples of legislative activities include voting on legislation, resolutions, and ordinances that concern public policy. *Id.* Defendants Pennington, Lynch, and Lucero's decision to vote for the amended forum policy was undoubtedly legislative in nature; the amended forum policy updated Bloomfield policy regarding the placement of monuments on the city lawn. *See id.* (explaining that legislative actions concern the "the enactment or promulgation of public policy") (citing *Sable v. Myers*, 563 F.3d 1120, 1125 (10th Okla. 2009). Defendants Pennington, Lynch, and Lucero are entitled to legislative immunity for the July 25, 2011 vote.

**D. Qualified Immunity**

   **1. Qualified Immunity is a Defense to Individual-Capacity Claims**

The Individual Defendants assert qualified immunity and claim that they are entitled to its protection even if the Court adopts Plaintiffs' asserted facts and ignores the outstanding disputes. Plaintiffs argue that the Individual Defendants are not entitled to qualified immunity because qualified immunity is a defense to claims for monetary damages. Response at 2. Plaintiffs primarily seek declaratory and injunctive relief, requesting nominal damages of only $1.00 for each Plaintiff. *Id.*

While Plaintiffs are correct that qualified immunity is not a defense to claims for injunctive relief against an official in his official capacity, Plaintiffs seek more than injunctive relief. Qualified immunity protects officials from claims for nominal damages and attorney's fees. *See*, *e.g.*, *Hopkins v. Saunders*, 199 F.3d 968, 976-78 (8th Cir. 1999) (holding that qualified immunity precludes an award of nominal damages or attorney's fees); *Cummins v. Campbell*, 44 F.3d 847, 849 (10th Cir. 1994) (disallowing nominal damages because defendants were entitled to qualified immunity). The Individual Defendants may assert qualified immunity as a defense to the claims against them in their individual capacities.

### 2. Qualified Immunity Analysis

When a defendant asserts qualified immunity at the summary judgment stage, the procedure for analyzing the motion differs from the normal procedure. Under Federal Rule of Civil Procedure 56(a), a party may receive summary judgment if that party "shows that there is no genuine dispute as to any material fact and [the party] is entitled to judgment as a matter of law."

When a defendant asserts qualified immunity, even if the defendant is the party that has moved for summary judgment, the burden shifts to the plaintiff to show that:

> (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (quotation omitted). In determining whether a right is clearly established, "[t]he relevant, dispositive inquiry is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson v. Callahan,* 555 U.S. 223, 236 (2009). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2083 (2011).

*Courtney v. Okla. ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013). The Court should generally resolve the qualified immunity issue by "adopting the plaintiff's version of the

facts." *Rojas v. Anderson*, 2013 WL 3389450, at *2 n. 5 (10th Cir. July 9, 2013) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)). To prevail against the Individual Defendants' assertion of qualified immunity, Plaintiffs must first pinpoint how the behavior of each Defendant violated the Establishment Clause and then show that it would be clear to a reasonable official in each Defendant's position that his conduct was unlawful.

### i. Mayor Eckstein

Plaintiffs seek to hold Mayor Eckstein liable based on his "implementation" of city policy in approving the monument and based on his general involvement with the monument. Response at 4. However, Mayor Eckstein was minimally, if at all, involved with the erection of the Ten Commandments monument. He never voted to approve the monument or the forum policy governing the placement of monuments. Plaintiffs identify few facts directly linking Mayor Eckstein with the process by which the monument came to be built. At the pretrial conference, Plaintiffs noted that Mayor Eckstein's name appears on the Bloomfield City Council meeting minutes and that Mayor Eckstein was involved with the decision to place the June 13, 2011 approval or acknowledgement of the monument on the consent agenda. Plaintiffs do not explain how either the format of the minutes or the procedural decision to include a vote as part of the consent agenda contributed to or caused the alleged constitutional violation.

In addition, Plaintiffs argue that Mayor Eckstein is liable because of his general involvement with the monument. When asked to identify the persons "involved with, . . . or who participated in, the design, layout, plan, configuration, construction, fabrication, or placement of

the Ten Commandments Monument," Defendants identified Mayor Eckstein. Defendant City of Bloomfield's Supplemental Response to Plaintiff Jane Felix's First Set of Interrogatories, Exhibit J to PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT (Doc. No. 62-10) at 2-3. Defendants also provided Mayor Eckstein's name in response to an interrogatory asking for the names of "all persons . . . involved with, or who participated in, the selection of the location for the placement of the Ten Commandments Monument . . ." *Id.* at 4.

The interrogatories highlighted by Plaintiffs provide the Court with little information. For example, Defendants identified Mayor Eckstein as being involved with or having participated in the selection of the location of the monument, even though both parties agree that Mr. Mauzy selected the location of the monument and the Bloomfield City Manager approved the site selection. Exhibit A, Stipulated Factual Contentions ¶ 32. Blanket statements that Mayor Eckstein was "involved" with the monument are not sufficiently specific to hold him liable for the alleged harm caused by the monument, especially since the stipulated facts strongly suggest that Mayor Eckstein was not responsible for the decision to allow the monument to be built.

    **ii.    Council Members Pennington, Lynch, and Lucero**

        **a.  Specific Conduct**

As with Mayor Eckstein, Plaintiffs seek to hold Defendants Pennington, Lynch, and Lucero liable based on their "implementation" of city policy in approving the monument and based on their general involvement with the monument. As discussed above, blanket statements about the named Defendants' "involvement" with the monument are insufficient to withstand

summary judgment on the claim of qualified immunity. Plaintiffs must identify how each Defendant personally violated their constitutional rights.[4]

Here, Defendants Pennington, Lynch, and Lucero voted to approve or acknowledge the Ten Commandments monument at the June 13, 2011 city council meeting, arguably allowing the erection of the monument that allegedly caused constitutional harm to the Plaintiffs.[5] The Court will proceed with the qualified immunity analysis by assessing whether it would have been clear to a reasonable official that voting to approve or acknowledge the monument in the factual context confronting Defendants Pennington, Lynch, and Lucero violated the Establishment Clause.

---

[4] Plaintiffs correctly recognize that they may not hold Bloomfield City Council members liable for enacting city policy regarding the placement of monuments, because council members are entitled to legislative immunity for this act. The Court will not consider the July 25, 2011 vote as part of the qualified immunity calculus.

[5] Defendants do not assert legislative immunity for the July 13, 2011 vote. *See* DEFENDANTS ECKSTEIN, PENNINGTON, LYNCH, AND LUCERO'S REPLY SUPPORTING THEIR MOTION TO RECONSIDER THE ORDER DENYING SUMMARY JUDGMENT (Doc. No. 99) at 7-8 ("Defendants never sought legislative immunity for anything other than Pennington, Lynch, and Lucero's actions to amend the forum policy."). Since the July 13, 2011 vote involved the approval of the monument after the enactment of the first forum policy, the vote was likely administrative, not legislative, in nature.

Legislative immunity only extends to legislators acting "in the sphere of legitimate legislative activity." "The essentials of the legislative function are the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of conduct." *Kamplain v. Curry County Bd. of Com'rs*, 159 F.3d 1248, 1251 (10th Cir. 1998). Generally, the application of existing policies to specific facts is outside the sphere of legislative activity. *See Sable*, 563 F.3d at 1126 (holding that city councilors were entitled to legislative immunity for their decision to condemn plaintiff's property because the decision was not "an essentially ministerial task," such as "applying the law and predetermined criteria to select a bid"); *Crymes v. DeKalb County*, 923 F.2d 1482, 1485-86 (11th Cir. 1991) (a Board of Commissioners decision to deny the plaintiff's application for a development permit was an administrative decision and was not subject to legislative immunity); *Cinevision Corp. v. Burbank*, 745 F.2d 560, 580 (9th Cir. 1984) (affirming district court decision that a city council was acting in an executive capacity and was not entitled to qualified immunity when it voted to deny plaintiff, a concert promoter with whom the city had a contract, access to a public forum in violation of the First Amendment).

If the issue was raised the Court would find that the Bloomfield City Council did not act in a legislative capacity when it voted to approve or acknowledge the monument. *See Kamplain*, 159 F.3d at 1251 ("Not all actions taken at a legislative meeting by a local legislator are legislative for purposes of immunity.").

### b. Clearly Established Nature of the Constitutional Right

Establishment Clause jurisprudence is complex. In *Lemon v. Kurtzman*, 403 U.S. 602 (1971), the Supreme Court outlined the basic framework for assessing the constitutionality of a government action, including government action that concerns a religious display, under the Establishment Clause. According to *Lemon*, government action must (1) have a secular legislative purpose, (2) have a principal or primary effect that neither advances nor inhibits religion, and (3) refrain from fostering an excessive government entanglement with religion. *Green v. Haskell County Board of Com'rs*, 568 F.3d 784, 796 (10th Cir. 2009) (paraphrasing the *Lemon* test).

The Tenth Circuit applies the purpose and effect prongs of the *Lemon* test as modified by Justice O'Connor's endorsement gloss. *Id.* at 797. According to the endorsement gloss, the government violates the establishment clause if it conveys a message that religion, or a particular religious belief, is favored or preferred. *Id.* at 796. The test is objective; a court must "evaluate whether a reasonable observer, aware of the history and context of the community in which the conduct occurred would view the practice as communicating a message of government endorsement or disapproval." *Id.* at 799 (internal citation omitted).

While *Lemon* remains good law, Supreme Court Justices have harshly criticized the *Lemon* test and splintered over its continued application. *Id.* at 798 n. 8. In 2005, a divided Supreme Court considered two Establishment Clause challenges to Ten Commandments displays. *See McCreary County v. ACLU*, 545 U.S. 844 (2005); *Van Orden v. Perry*, 545 U.S. 677 (2005). As demonstrated by the outcome of *McCreary* and *Van Orden*, "the Court has found no single mechanical formula that can accurately draw the constitutional line in every case." *Van Orden*, 545 U.S. at 686 (2005) (Breyer, J., concurring).

In *McCreary*, plaintiffs challenged the display of a framed copy of the Ten Commandments in a county courthouse. During the course of litigation, the county had expanded the display to include other documents, such as the Declaration of Independence. However, the Supreme Court found that the display was unconstitutional because its predominate purpose was religious. The Court expressly declined to abandon the tripartite *Lemon* test.

*McCreary* strongly suggests that district courts should view Ten Commandments displays with suspicion "[T]he original text [of the Ten Commandments] viewed in its entirety is an unmistakably religious statement dealing with religious obligations and with morality subject to religious sanction. When the government initiates an effort to place this statement alone in public view, a religious object is unmistakable." *McCreary*, 545 U.S. at 869. However, at the same time the Supreme Court decided *McCreary*, a plurality of the Court upheld the display of a Ten Commandments monument on the Texas State Capitol grounds. *See Van Orden*, 545 U.S. 677. The plurality opinion, authored by Chief Justice Rehnquist, approved the monument based on our Nation's history and the nature of the monument, after noting that the *Lemon* test was "not useful in dealing with the sort of passive monument that Texas . . . erected on its Capitol ground." *Id.* at 686. According to Justice Breyer, who cast the deciding vote in *Van Orden*, the Establishment Clause endeavors to forestall religious divisiveness; the 40-year lack of objections to the challenged Texas Ten Commandments display showed that the display did not impermissibly promote religion. *Id.* at 698, 702 (Breyer, J., concurring).

After *McCreary* and *Van Orden*, the Tenth Circuit struck down a Ten Commandments monument because it impermissibly endorsed religion. *See Haskell*, 568 F.3d 784. *Haskell* shares factual similarities with this case. In *Haskell*, a local citizen asked the Haskell County Board of Commissioners for permission to build a Ten Commandments monument on the courthouse

14

lawn. *Id.* at 790. The Board approved the monument, which was then erected with funds raised through local religious groups. *Id.* at 790-91. At a dedication ceremony planned by local citizens, local pastors prayed and gave remarks. *Id.* at 791. When the plaintiff filed a legal challenge, the Board did not hesitate to defend the monument. *Id.* at 801. Significantly, the public statements of the Board Commissioners in support of the monument evinced their intent to promote religion. *Id.* at 802 (explaining that one Commissioner supported the monument by saying "God died for me and you, and I'm going to stand up for him").

While *McCreary*, *Van Orden*, and *Haskell* provide touchstones for assessing the constitutionality of a Ten Commandments display, they generate few clear rules. Because a Ten Commandments display can "convey not simply a religious message but also a secular moral message" or a historical message, *Van Orden*, 545 U.S. at 701 (Breyer, J., concurring), the constitutionality of a Ten Commandments display turns on the minute facts in each case. Establishment Clause doctrine is "fact-intensive," *Haskell*, 568 F.3d at 800, and it "lacks the comfort of categorical absolutes," *McCreary*, 545 U.S. at 860 n. 7. "A challenged government action that might pass constitutional muster in some settings might be deemed constitutionally suspect in some other American communities or in other contexts." *Haskell*, 568 F.3d at 800 (internal citation omitted).[6]

The Individual Defendants argue that the complexity and fact-dependence of Establishment Clause jurisprudence precludes the Court from finding that their conduct was

---

[6] Members of the Supreme Court who are unhappy with Establishment Clause jurisprudence have decried its unpredictability. *See id.* at 908 n.8 (Scalia, J., dissenting) ("Nothing so clearly demonstrates the utter inconsistency of our Establishment Clause jurisprudence as Justice O'Connor's stirring concurrence in the present case."); *Utah Highway Patrol Ass'n v. Am. Atheists, Inc.*, 132 S. Ct. 12 (2011) (Thomas, J., dissenting from denial of certiorari) (noting that Establishment Clause doctrine regarding religious displays is confusing, conflicting, and indeterminate).

clearly unlawful. Complexity weighs in favor of qualified immunity, but Defendants are not entitled to qualified immunity on these grounds.

Qualified immunity is not a "scavenger hunt for prior cases with precisely the same facts." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). This is particularly true when the law requires "an all-things-considered inquiry with careful attention to the facts and circumstances of each particular case." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). Because determining whether a religious display violates the Establishment clause is a fact-intensive inquiry, there will almost never be a previously published opinion involving exactly the same circumstances. The Court "cannot find qualified immunity wherever [there is] a new fact pattern." *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006).

While it can be difficult to identify "the level of generality at which the constitutional right must be 'clearly established,'" *Fogarty*, 523 F.3d at 1161, the Court must ultimately focus on whether the law at the time of the defendant's conduct provided the defendant with "fair notice" regarding the legality of his conduct. *Pierce*, 359 F.3d at 1298. Here, *Haskell* and *McCreary* clearly indicate that a contested government decision to place the Ten Commandments, and only the Ten Commandments, on government property violates the Establishment Clause absent facts that mitigate the religious effect of the display. *See McCreary*, 545 U.S. at 868 ("Where the text [of the Ten Commandments] is set out, the insistence of the religious message is hard to avoid in the absence of a context plausibly suggesting a message going beyond an excuse to promote the religious point of view.").

Nonetheless, the Court finds that the Defendants Pennington, Lynch, and Lucero are entitled to qualified immunity, because it is not clear that their specific conduct violated the Establishment Clause. Unlike the government actors in *McCreary* and *Haskell*, Defendants

Pennington, Lynch, and Lucero were not involved with, and there is no evidence they even knew about, the initial decision to permit a Ten Commandments display. Plaintiff produces no statements of Defendants Pennington, Lynch, or Lucero from which the Court could infer an impermissible purpose or effect. Defendants Pennington, Lynch, and Lucero merely voted to approve or acknowledge a Ten Commandments monument after a previous Bloomfield City Council enacted a forum policy that opened the lawn to private citizens.

Even if it was a mistake, Defendants Pennington, Lynch, and Lucero could have reasonably concluded that the Bloomfield forum policy created a museum-like setting, which permitted the city to display religiously themed monuments.[7] According to the Tenth Circuit, "[a] state is not prohibited from displaying art that may contain religious or anti-religious symbols in a museum setting." *O'Connor v. Washburn Univ.*, 416 F.3d 1216, 1228 (10th Cir. 2005). *O'Connor* involved an Establishment Clause challenge to a statue, entitled *Holier Than Thou*, that was displayed on a college campus along with 29 other outdoor sculptures. Despite the statue's implied criticism of Catholicism, the Court found that the setting negated government endorsement because no reasonable observer would conclude that each individual piece of art conveyed a government message.

Under the Bloomfield forum policy, "[a]ll monuments shall contain a statement . . . explaining that the message communicated by the monument is that of the donor, not the City of Bloomfield." A Policy Governing Placement of Monuments on the City Hall Lawn, Exhibit L to Plaintiff's Motion for Summary Judgment (Doc. No. 62-12). Like the museum-setting in *O'Connor*, the Bloomfield forum policy arguably mitigates the impermissible religious effect of

---

[7] In *Haskell*, the Tenth Circuit refused to consider the hypothetical constitutionality of a monument erected under a forum policy. *Haskell*, 568 F.3d at 795 ("We are unable to decide that hypothetical case on the facts before us.").

the Ten Commandments monument by separating the government from the message contained in the display.

Because Defendants Pennington, Lynch, and Lucero's behavior falls within the "hazy border" between acceptable and unlawful conduct, *Saucier v. Katz*, 533 U.S. 194, 206 (2001), they are entitled to qualified immunity, and the Court need not, and will not, determine the purpose or effect of the Bloomfield Ten Commandments monument.

IT IS ORDERED THAT DEFENDANTS ECKSTEIN, PENNINGTON, LYNCH, AND LUCERO'S OPPOSED MOTION TO RECONSIDER ORDER DENYING SUMMARY JUDGMENT (Doc. No. 95) is granted and the claims against Defendants Eckstein, Pennington, Lynch, and Lucero in their official and individual capacities are dismissed because of redundancy and qualified immunity.

*/s/ James A. Parker*
SENIOR UNITED STATES DISTRICT JUDGE